297 B.R. 532 (2003)
In re John J. and Beatrice MINIUK, Debtors.
John J. and Beatrice Miniuk, Plaintiffs,
v.
United States of America, Defendant.
Bankruptcy No. 01 B 17984, Adversary No. 02 A 01300.
United States Bankruptcy Court, N.D. Illinois, Eastern Division.
August 22, 2003.
*533 C John Ruddy, Ruddy & Varga, Aurora, IL, for Debtors.

Memorandum Decision
BRUCE W. BLACK, Bankruptcy Judge.
This case is before me on cross-motions for summary judgment. The bare-bones issue is dischargeability of taxes under section 523(a)(1)(B)(ii)[1] of the Bankruptcy *534 Code[2]. Because of a decisional split in the circuits, each party has more specifically framed the issue in the way most conducive to resolution in its favor. The debtors, John and Beatrice Miniuk ("debtors"), believe the only question I need to resolve is whether the Internal Revenue Service ("IRS") Form 1040's they filed are "returns" for purposes of section 523(a)(1)(B). On the other hand, the IRS believes that a debtor who does not submit a Form 1040 until after the IRS has already assessed the tax liability should not be allowed to discharge that liability in bankruptcy. Both parties ask me to delineate a bright-line rule. Although I decline to establish any such bright-line rule under either party's theory of the case, for the reasons set forth below, I do find the IRS' arguments more persuasive on the particular facts before me. Accordingly, the debt is held to be nondischargeable under the Bankruptcy Code.

Jurisdiction
Jurisdiction over this matter lies under 28 U.S.C §§ 1334. Venue is proper under 28 U.S.C. § 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Standards for Summary Judgment
The pendency of cross motions for summary judgment does not require that one of the motions be granted. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed.1998). Each motion must be evaluated independently. Pursuant to Federal Rule of Civil Procedure 56, incorporated into the bankruptcy realm by Federal Rule of Bankruptcy Procedure 7056, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]

Facts
The debtors did not file timely tax returns for the years 1989 and 1990, and did not seek any extensions of time to file.[4] With respect to the missing 1989 returns, the IRS began a taxpayer delinquency investigation on June 27, 1991 and notified the debtors via the U.S. postal service.[5] The debtors did not respond to the notice. Between October 2, 1991, and December 9, 1991, utilizing information gathered from various reporting third-parties, the IRS prepared and filed a substitute for return[6] on behalf of the debtors. A thirty-day *535 letter was sent to the debtors informing them of their tax liability. Again, debtors did not respond. Because of their non-responsiveness, the IRS sent debtors a statutory notice of deficiency via certified mail on February 11, 1992. This notice was returned to the IRS non-deliverable, but a forwarding address was provided. On February 1, 1993, the IRS mailed a new statutory notice of deficiency to the debtors via certified mail, and this notice was not returned. The statutory notice of deficiency allows delinquent filers ninety days to respond before tax liability is assessed. The debtors did not respond to the delinquency notice and the 1989 tax liability was assessed on July 19, 1993, and notice of the assessment was mailed to the debtors.
With respect to 1990, essentially the same procedure was followed. The IRS began the delinquency investigation on May 29, 1992; completed the substitute for return on March 29, 1993; mailed the statutory notice of deficiency on May 22, 1993;[7] and assessed the tax liability on November 8, 1993.
In the meantime, on May 22, 1993, John Miniuk attended an IRS-sponsored "non-filer" program designed to help non-filers get back on track. At the program, he was advised to file all of the missing returns, including the ones for the years that had already been assessed, because voluntary filing of missing returns is an IRS prerequisite for entering into an installment payment agreement. In July 1993, Mr. Miniuk sent a letter to the IRS stating that he would have all of his missing returns filed by August 1993. The Miniuks, however, did not file the returns in August of 1993. Instead, on June 22, 1994, they filed for Chapter 7 bankruptcy protection. The next day, on June 23, 1994, the Miniuks submitted their Form 1040 for 1989 to the IRS. A few weeks later, on July 13, 1994, they submitted their Form 1040 for 1990 to the IRS. The debtors received their Chapter 7 discharge on November 3, 1994 and believed their tax liability had been discharged. They were not aware that the tax debt had not been discharged until the IRS began sending them deficiency notices again.
Once the debtors realized that their tax liability had not been discharged, they contacted the IRS and agreed to an installment payment plan. The debtors made ten payments into the plan, from June of 1995 through March of 1996, and then defaulted on their payments. Shortly thereafter, the debtors sought a two-year forbearance from the IRS.[8] The IRS granted the forbearance through August 1998. After the forbearance expired in 1998, the debtors did not resume payments, and the IRS continued routine collection attempts until May 17, 2001, when the debtors filed their second Chapter 7 bankruptcy case. The debtors were granted a discharge in this second case on September 13, 2001.

*536 Parties' Assessment of the Issues

The debtors' primary argument is that the returns they filed in 1994 should qualify as returns because they constitute an "honest and reasonable" attempt to satisfy the tax law.[9] They argue that section 523(a)(1)(B) does not specify whether the return must be filed before or after assessment, and claim that to hold otherwise thwarts the plain language of the Bankruptcy Code by requiring debtors to know the intricacies of internal IRS procedures. They base their contentions on the Crawley[10] opinion out of the bankruptcy court for the Northern District of Illinois, and two cases, Nunez[11] and Savage,[12] out of bankruptcy appellate panels in the Ninth and Tenth Circuits. These three cases hold that the court must simply look to the debtor's intent at the time of filing the return. The debtors' second argument is based on the proposition that the returns filed by the Miniuks did have a tax purpose. When the debtors filed their Form 1040's, the IRS compared them to the substitutes for returns it had prepared, and used the information from the Form 1040's to reduce the debtors' tax liability. The debtors believe that since the IRS used the Form 1040's to adjust the liability, its actions are determinative that the Form 1040's had a purpose.
The IRS' position is that an assessment of taxes, made after the deficiency proceedings described above are complete, precludes a later-submitted Form 1040 from constituting a "return . . . required to be filed" for purposes of section 523(a)(1)(B). The IRS argues that the Miniuks' effort in filing a return four years late is not an honest attempt to comply with the tax laws, but rather was an effort to start the clock running so they could meet the time requirements of the Bankruptcy Code for discharging taxes. The IRS also argues that the plain language argument elevates the public policy goal of granting debtors a "fresh start" to a level above the equally significant public policy goal of maintaining a voluntary tax reporting system. The IRS supports this claim by pointing out that the Court of Appeals for the Sixth Circuit has upheld the IRS's position on the basis that to hold otherwise inappropriately violates the integrity of the taxing system.

Analysis
A. Hindenlang[13] and the Fact-Based Approach to Resolution of Pre/Post-Assessment Issues
At the outset I will note that the Seventh Circuit has not made a dispositive *537 determination with respect to pre/post assessment dischargeability of taxes. The Sixth Circuit is the only court of appeals to have squarely ruled on this issue, though the Ninth Circuit has resolved a closely related matter. In the Sixth Circuit case, U.S.A. v. Hindenlang,[14] the facts are quite similar to the facts in the instant case. In Hindenlang, the debtor did not file tax returns for the years 1985-88. The IRS sent thirty-day deficiency letters and received no response. It prepared substitutes for returns and sent them to Hindenlang. Again, Hindenlang did not respond. The IRS then sent him a formal notice of deficiency and waited the requisite ninety days for a response. When Hindenlang did not respond, the IRS assessed the deficiencies. Two years after the assessments, Hindenlang filed Form 1040's nearly identical to the substitutes the IRS had prepared. Slightly more than two years after filing the Form 1040's, Hindenlang filed for Chapter 7 relief. The bankruptcy and district courts discharged the debts. The Sixth Circuit reversed.
The Sixth Circuit began its discussion by pointing out that the Internal Revenue Code[15] does not define "return," but instead uses the term conceptually to encompass any statement, form, or list required to be submitted by various IRS regulations. Neither does the Internal Revenue Code specify when a purported return no longer qualifies as a return. For bankruptcy purposes, the court found that the Bankruptcy Code simply adopts the IRS' conceptual definition of "return" and does not impart any meaning to the term that the Internal Revenue Code would not impart to it. The court also acknowledged and applied the Beard[16] test.
The Sixth Circuit went on to state that the general purpose of section 523 is to prevent debtors from defrauding a wide variety of creditors and therefore, by implication, contains a good faith requirement. With respect to taxes, the court said that section 523(a)(1)(B)(ii) was designed with a two year waiting period to prevent debtors from postponing filing of tax returns until the eve of bankruptcy and then seeking discharge shortly thereafter. It said the two year period essentially gives the IRS notice and time to act before the tax debts can be discharged.
After resolving those preliminaries, the Sixth Circuit turned to the heart of the matter, which in its view turned out to be a burden of proof issue. The lower courts in Hindenlang had decided that any facially valid return filed by the debtor shifted the burden of proving particularized evidence of dishonesty to the IRS. The Sixth Circuit disagreed. The court acknowledged that creditors must prove exceptions to discharge by a preponderance, and acknowledged that exceptions are strictly construed in favor of debtors. However, it held as a matter of law that a Form 1040 does not qualify as a return if it no longer serves any tax purpose or if it has no effect under the revenue code. Applying that standard to the facts, the court held that when a debtor does not respond to any deficiency notices and the IRS is forced to go through the time-consuming and expensive assessment process to determine an individual's tax liability, the IRS has met its burden of showing that the debtor's actions were not an honest or reasonable attempt to meet the requirements of the tax law.
Ultimately, the court said that if it did not find this way, a debtor who filed a tax *538 return after assessment would be better off in bankruptcy than a debtor who did not, even though the late-filed return served no purpose. In the court's view, "such a result would create an unjustifiable inconsistency in the law,"[17] and would not serve the purpose of section 523. Therefore, the Form 1040 filed by the debtor after the taxes had been assessed was not an honest and reasonable attempt at compliance with tax laws and did not qualify as a "return" for purposes of the Bankruptcy Code.
The Sixth Circuit did not declare that a return filed post-assessment could never satisfy the requirements of section 523(a)(1)(B)(ii). Instead, the court simply established that a fact-based inquiry would in most instances be necessary to resolve the dischargeability issue.
In the Ninth Circuit, an essentially fact-based inquiry has also been established for resolution of section 523(a)(1)(B) questions. Again, the facts of U.S.A. v. Hatton,[18] ("Hatton I") in many ways resemble the facts of the case at bar. In Hatton I, the debtor failed to file his tax return, was notified by the IRS, and ignored the notice. Subsequently, the IRS prepared a substitute return, again notified the debtor, again was ignored, and finally assessed. Four years later, after the IRS had repeatedly sent delinquency notices, placed a lien on debtor's property, and ultimately threatened to garnish his wages and seize his property, the debtor agreed to meet with the IRS. After slogging through six months of negotiations, the debtor finally agreed to an installment plan. He made payments under the plan for about three years, then filed for Chapter 7 protection.
The bankruptcy court and a bankruptcy appellate panel agreed that the issue was whether the substitute for return the IRS prepared on debtor's behalf, coupled with the installment agreement the debtor had signed, satisfied the section 523(a)(1)(B)(I) requirement that a "return" be filed. Both of these courts determined that the debtor's "cooperation" with the IRS, including his partial performance under the installment agreement, "provided the equivalence of a required return"[19] and therefore excused the debtor from the requirement of filing a voluntary Form 1040.
The Ninth Circuit disagreed and in Hatton II[20] reversed the decision of the bankruptcy appellate panel. The court applied the Beard test and found two independent grounds for reversal. First, the court found that the technical requirement of physically filing a return had never been met. The court dismissed the notion that the substitute for return plus the installment agreement amounted to a voluntary filing of a "return." More to the point for purposes of the instant case, however, was the second holding which was that the debtor's purported "cooperation" with the IRS was not an honest and reasonable attempt to satisfy the requirements of the revenue code. Rather, the Ninth Circuit held that the debtor's "belated acceptance of responsibility"[21] occurred only after he had made numerous attempts to evade paying his taxes and after the IRS essentially had him backed into a corner.
B. The Miniuks' Reliance on the Plain Language Theory
The reversal of the lower Hatton court makes a significant impact on the Miniuks' *539 argument. The Miniuks rely solely on three cases to support their theory of the case. The holdings in two of the cases, however, have been called into question because of their reliance on the now-overruled Hatton I. In the first, U.S.A. v. Nunez,[22] the debtor failed to file nine years' worth of tax returns, four years of which the IRS assessed. One year after the assessments, the debtor filed Form 1040's for the missing years that were virtual duplicates of the substitutes for returns the IRS had prepared. Three years later the debtor filed a Chapter 7 petition and immediately filed an adversary complaint to have the tax liability discharged. The IRS argued that the Form 1040's filed were not returns because they served no tax purpose and were not filed in good faith. The debtor argued that the forms were filed in good faith because he filed them after attending an amnesty program. The bankruptcy appellate panel held for the debtor, citing two specific reasons: 1) the plain language of section 523(a)(1)(B) does not use assessment as a trigger, and 2) the good faith inquiry begins and ends with whether the form filed by the debtor satisfies the criteria for a return "on its face."[23] As noted, however, the appellate panel relied heavily on its prior decision in Hatton I for this conclusion. After the overruling of that case, at least two courts have questioned the continued utility of Nunez as precedent, and I join them. In Hetzler v. U.S.A.,[24] the court noted that the Nunez holding has been "substantially weakened"[25] by the reversal of Hatton I. Similarly, in Moroney v. U.S.A., the Eastern District of Virginia noted that the "effect of the Hatton II decision is unsettled"[26] with respect to Nunez, though it then went on to disavow the "on its face" holding of Nunez and adopted the fact-based approach of Hindenlang.
The second case afforded much weight by the Miniuks is the Crawley[27] decision rendered by Judge Squires, a colleague of mine on this court. Judge Squires felt the facts of the case before him presented a choice between the conflicting results of Hindenlang and Nunez. After reviewing those cases, Judge Squires determined that the Nunez plain language approach was preferable. He concluded that Congress would have specified assessment as a trigger for nondischargeability if it had intended to.[28] Additionally, in following Nunez, Judge Squires held that good faith inquiry should be narrowly focused to include only the debtor's intent at the time he files a return. Again, I note that the Nunez holding is now of suspect authoritative value because of its possible abrogation by the Ninth Circuit's Hatton II decision. Thus, Crawley's reliance upon Nunez also calls into doubt its precedential value and I decline to follow Crawley.
The third case cited by the Miniuks is Savage v. I.R.S.,[29] a Tenth Circuit bankruptcy appellate panel decision, which has not been abrogated or reversed by the Tenth Circuit. Savage stands for the *540 same premise as do Nunez and Crawley; i.e. that the plain language of section 523(a)(1)(B) does not contain any reference to IRS assessment or non-assessment of taxes. As previously stated, I find that such a restrictive reading does not properly take into account the import of voluntary reporting to the integrity of the taxation system, and I also decline to follow its holding.
Though not cited in the Miniuks' briefs, a second case decided by a colleague of mine on this court is Payne v. U.S.A.[30] In Payne, Judge Schmetterer agreed with both the Nunez and Crawley decisions. Since the Miniuks did not cite to the Payne decision, I will not delve deeply into it. I will simply state that my reasoning with respect to Nunez and Crawley applies to the Payne decision also.
C. IRS' Use of the Late-Filed Returns
The Miniuks' second argument asserts that because the IRS reduced their tax liability based on the returns they filed, there was a tax purpose for the returns. This argument appears to arise from a footnote in the Hindenlang case[31] which suggests that if a debtor can show a legitimate tax purpose for the return, it might be possible for him to satisfy the fourth prong of the Beard test.[32] I do not agree with the Miniuks' appraisal of the IRS' use of their returns. The IRS treated the 1989 and 1990 returns as requests for abatement and as such the returns were only used to verify the information that the IRS had itself compiled in order to reduce the assessments on the Miniuks' behalf.
Additionally, the Miniuks argue that they filed late returns for 1989, 1990, and 1994, but that the IRS is only contesting the 1989 and 1990 liabilities. They claim that from their perspective all three returns are the same, that they cannot understand the difference, and that they should not be held accountable for knowing the intricacies of IRS procedure. This argument has very little substance. The IRS has made clear that it is not contesting the 1994 liability only because it never completed an assessment for that year. According to the IRS, the format of the returns themselves is irrelevant. Its position is fairly straightforward and not especially confusing.
The Sixteenth Amendment[33] granted to Congress the power to create an income tax. In designing the present income tax system, Congress commingled a method for voluntary self-assessment with means of penalization for non-compliants. The system as a whole serves to accomplish two underlying goals. The first is to ensure uniform reporting by all taxpayers, without which verification of reported information and collection of taxes owed would be improbable if not impossible.[34] The second is to prevent the needless expenditure of public funds in the investigation *541 and pursuit of evaders.[35] The returns filed by the Miniuks did absolutely nothing to serve either of these purposes and in fact benefitted no one but the Miniuks themselves. Their contrary assertion is not well-taken.
D. Walsh Presents an Alternative to Hindenlang for Resolution of the Issue
While my primary basis for resolution of this case is derived from the analysis expounded in Hindenlang, I also believe that the analysis in Walsh v. U.S.A.,[36] presents a rational alternative basis for resolution. The facts in Walsh are simply a variation on the theme repeated throughout this writing. The disposition of the case, on the other hand, departed from Hindenlang's focus on the definition of "return," and instead focused on the construction of the phrase "return, if required" from section 523(a)(1)(B).
In Walsh, the debtor did not voluntarily file his Form 1040's. The IRS proceeded to assessment and eventually garnished his wages. Three years later, the debtor went to an IRS office and was given assistance in preparing the missing returns, which he then filed on the appropriate IRS Form 1040's.
The Walsh court looked at the forms filed by the debtor and determined that they were income tax returns under any dictionary definition and in common parlance. The court then turned to the Beard test and determined that the forms most certainly satisfied the first three prongs; i.e. the Form 1040's 1) purported to be returns, 2) were executed under penalty of perjury, and 3) contained sufficient data to allow calculation of the tax. Upon attempting to apply the "honest and reasonable" prong, however, the court hit upon what it felt was an unnecessary snag. The court felt that examining the debtor's intent at the time he filed what is obviously an income tax return, missed the whole point of section 523(a)(1)(B) and the IRS' role in the assessment process.[37]
The court reasoned that once the IRS completed the entire assessment process, any return filed by a debtor is simply no longer "required." More pointedly, any action by a debtor after the assessment is complete is no longer voluntary in any sense, as the debtor, at that point, has forced the IRS into a costly investigation and is now being pursued by the IRS for collection. The court found this view of the phrase "return, if required" to be the most logical and held that, "once the tax obligation has been fixed and liquidated via assessment, the process is done and the return is no longer `required' to further it."[38]
I agree with Walsh and would also find the Miniuks' debt nondischargeable under its rationale.

Conclusion
Applying the foregoing analysis to the facts at hand, I believe the IRS has set forth a stronger argument and is entitled to summary judgment. The facts bear out *542 that the Miniuks were not familiar enough with the bankruptcy laws to get their taxes discharged the first time they filed bankruptcy in 1994. They filed their tax returns the day after they filed for Chapter 7 protection, hoping to have their tax debt discharged in the bankruptcy case. Unfortunately for them, this particular timing was not satisfactory for purposes of the Bankruptcy Code. However, by the time they filed their second bankruptcy in 2001, they knew how to get their taxes discharged under a technical application of the words of the Bankruptcy Code. Additionally, it appears that Mr. Miniuk simply lied about receiving notices from the IRS. Though he may not have received each and every notice, he acknowledged in his deposition that "he began receiving notices again."
While the bankruptcy courts are somewhat split on the issue before me, the weight of authority of the Sixth and Ninth Circuits tips the balance in favor of the IRS' position rather than the Miniuks'. The courts finding for the IRS conclude that the plain meaning rule does not take into consideration the legislative history of section 523(a)(1)(B), nor the absurd result that a debtor who times things properly and files a meaningless return can be rewarded for non-compliance with the tax laws, while a debtor who does not file the meaningless return will not see his taxes discharged. It appears that the plain meaning rule allows even the least credible of debtors to escape on a technicality. Additionally, while the public policy of the Bankruptcy Code is to give a fresh start to an honest unfortunate, compliance with the Internal Revenue Code and the integrity of the tax system are equally important public policy positions. The plain meaning analysis pays little heed to that aspect of the issue.
In choosing to follow the Hindenlang line of cases, I am adopting a fact-based test which requires some showing of good faith on the part of a debtor, but does not set up a bright-line pre/post assessment standard. I believe adoption of the plain meaning analysis could ultimately force the IRS to be less lenient in accepting installment agreements or requests for forbearance because of the likelihood of abuse. The Miniuks asked the IRS for a two year forbearance. That amount of time allowed them to fit into the technical time-frame set out by the Bankruptcy Code for dischargeability of taxes. After the forbearance period ended, the Miniuks did not make any payments under the installment plan they had previously agreed to, and they continued to resist the IRS's attempts at collection. Then, after the statutory six-year period for filing a second Chapter 7 finally expired, the Miniuks did in fact file a second Chapter 7 case to have their tax debt discharged. As noted, the two-year provision of section 523(a)(1)(B)(ii) is essentially a notice period for the IRS that allows the IRS to begin proceedings to collect taxes.[39] In the case at bar, the IRS was diligent and fair in its pursuit of the Miniuks. The IRS entered into an agreement with the Miniuks and gave them a forbearance to accommodate their request. It would be most unfair for me to now penalize the IRS for granting a forbearance that appears in retrospect to have fit nicely into the Miniuks' plan to get their taxes discharged. This is particularly true because Mr. Miniuk had, and still has, a job that pays him $120,000 a year.
In short, I find that the returns filed by the Miniuks were not an honest and reasonable attempt at compliance with the tax laws. On the contrary, when the Miniuks *543 filed their returns their intent was simply to get their tax liabilities discharged in bankruptcy. Therefore, I conclude that the taxes owed to the IRS for the years 1989 and 1990 should be nondischargeable.
For the reasons stated herein, the motion of the Internal Revenue Service for summary judgment is GRANTED, and the Miniuks' cross motion for summary judgment is DENIED. This Opinion will serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. A separate judgment will be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.
NOTES
[1] Section 523(a)(1)(B)(ii) reads as follows:

"(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt 
(1) for a tax . . .
(B) with respect to which a return, if required 
(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition . . . "
[2] 11 U.S.C. § 101-1330.
[3] Fed. R. Bankr.P. 7056
[4] The debtors also failed to file a return for 1992, but the IRS is not disputing dischargeability of that liability because the IRS had not yet done an assessment for that year.
[5] The Debtors' complaint alleges that they never received notice of the assessments. Evidence submitted by the IRS, including John Miniuk's own deposition testimony, squarely meets and convincingly refutes this claim. Therefore, unless otherwise noted, I will conclude that debtors received proper notice and were well aware of their delinquent position with respect to the IRS.
[6] Under 26 U.S.C. 6020(b) the IRS is authorized to prepare and file an income tax return on behalf of an individual if that individual fails to do so himself. The IRS may utilize whatever information it has available, or that it can obtain through testimony or otherwise. A return filed pursuant to this procedure is called a substitute for return.
[7] This notice of deficiency was returned to the IRS by the post office with no forwarding address available. However, the IRS sent a notice of assessment in November 1993 and three more notices of balance due in December 1993, January 1994, and February 1994 which were not returned. The Miniuks then provided updated address information to the IRS in February 1994.
[8] Mr. Miniuk submitted into evidence an affidavit, signed on August 26, 2002, that states that he lost his job in 1996 and upon his request the IRS granted him a forbearance. However, in his deposition testimony given on January 6, 2003, Mr. Miniuk says that he changed jobs in 1996 and began working for Phillips Chevrolet in Frankfort, Illinois, where is still employed to date. He makes no mention of being unemployed for any significant length of time in his deposition.
[9] The "honest and reasonable" language is prong four of a four-part test, derived from two U.S. Supreme Court cases, Germantown Trust Co. v. Commissioner, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940), and Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934), and culled into being by the tax court in Beard v. Commissioner, 82 TC 766, 1984 WL 15573 (1984). The test, generally called the Beard test, has become the most widely accepted test for deciding if a filed document constitutes a return. The test says that in order for a document to qualify as a return it must:

1) purport to be a return
2) be executed under penalty of perjury
3) contain sufficient data to allow calculation of the tax
4) represent an honest and reasonable attempt to satisfy the requirements of the tax law.
Cases under section 523(a)(1)(B)(ii) tend to have the first three. It is typically the "honest and reasonable" prong that is not satisfied.
[10] Crawley v. U.S.A. (In re Crawley), 244 B.R. 121 (Bankr.N.D.Ill.2000).
[11] U.S.A v. Nunez (In re Nunez), 232 B.R. 778 (9th Cir. BAP 1999).
[12] Savage v. I.R.S. (In re Savage), 218 B.R. 126 (10th Cir. BAP 1998).
[13] U.S.A. v. Hindenlang (In re Hindenlang), 164 F.3d 1029 (6th Cir.1999).
[14] Id.
[15] 26 U.S.C. § 1 et seq.
[16] See note 9.
[17] Hindenlang, 164 F.3d at 1035.
[18] 216 B.R. 278 (9th Cir. BAP 1997).
[19] U.S.A v. Hatton (In re Hatton), 216 B.R. 278, 283 (9th Cir. BAP 1997).
[20] U.S.A. v. Hatton (In re Hatton), 220 F.3d 1057, 1061 (9th Cir.2000).
[21] Id., at 1061.
[22] U.S.A. v. Nunez (In re Nunez), 232 B.R. 778 (9th Cir. BAP 1999).
[23] Id. at 783.
[24] Hetzler v. U.S.A., 262 B.R. 47 (Bankr.D.N.J.2001).
[25] Id. at 53.
[26] Moroney v. U.S.A. (In re Moroney), 2002 WL 31777588 (E.D.Va.2002).
[27] Crawley v. U.S.A. (In re Crawley), 244 B.R. 121 (Bankr.N.D.Ill.2000).
[28] Crawley, at 127.
[29] Savage v. I.R.S. (In re Savage), 218 B.R. 126 (10th Cir. BAP 1998).
[30] Payne v. U.S.A. (In re Payne), 283 B.R. 719 (Bankr.N.D.Ill.2002).
[31] See footnote seven in U.S.A. v. Hindenlang, wherein the Sixth Circuit left open the possibility that a debtor could prove either 1) that the return did fulfill some tax purpose, or 2) that the untimely filing was in fact an honest and reasonable attempt to fulfill the reporting requirements.
[32] The Hindenlang court was also quick to state that even a showing of legitimate tax purpose would not be a foolproof method for insuring dischargeability. It pointed out that such a showing might still not be enough to overcome an IRS showing that the filing was not an honest and reasonable attempt at compliance.
[33] U.S. Const. amend. XVI.
[34] Commissioner of Internal Revenue v. Lane-Wells, Co., 321 U.S. 219, 223, 64 S.Ct. 511, 88 L.Ed. 684 (1944).
[35] Walsh v. U.S.A. (In re Walsh), 260 B.R. 142, 148-149 (Bankr.D.Minn.2001).
[36] Walsh v. U.S.A. (In re Walsh), 260 B.R. 142 (Bankr.D.Minn.2001).
[37] The court did not disagree with the Beard test in toto. Rather, it felt that the Beard test should not be utilized except in the same context as it was formulated for. In Beard, the issue concerned an IRS form that had been so completely physically altered that it was no longer recognizable as the form it purported to be. In Walsh, there was no physical alteration of the form and the court felt that Beard was not applicable to the case before it.
[38] Walsh, 260 B.R. 142 at 151.
[39] Hindenlang, at 1032.