**In re Billy D. RUSHING, Debtor.**

**Billy D. Rushing, Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 97–00611–BHC–EWH.
Adversary No. A97–00076.**

United States Bankruptcy Court,
D. Arizona.

July 10, 2001.

■■■■■■■

224

Kenneth E. Moyer, Wachtel, Biehn, & Malm, Lake Havasu City, AZ, for debtor.

Paul K. Charlton, United States Attorney, Phoenix, AZ, Jennifer A. Giamo, Trial Attorney, Tax Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM DECISION

EILEEN W. HOLLOWELL,
Bankruptcy Judge.

This matter comes before the court on the I.R.S.'s motion for summary judgment in the Debtor's adversary complaint to determine the dischargeability of a tax debt under 11 U.S.C. § 523(a)(1). At issue is whether tax returns ("1040s") submitted by a debtor after the IRS has prepared a substitute return and assessed a deficiency are a returns within the meaning of 523(a)(1)(B). Because, as described below, the court finds there to be no genuine issue of material fact, the motion for summary judgment is granted.

FACTS

The Debtor failed to timely file tax returns for the tax years 1983 through 1986. In 1987 and again in 1991 the I.R.S. prepared substitute returns (the Substitute Returns) pursuant to 26 U.S.C. § 6020 and assessed deficiencies against the Debtor (the Assessments). On June 2, 1994 as part of an offer in compromise (the "First OIC") in which the Debtor sought to settle all of his tax liability,[1] the Debtor submitted 1040's for tax years 1979 through 1992 (the "Debtor's 1040's"). The First OIC was rejected for procedural and documentation reasons, including the fact that the Debtor had not submitted returns all outstanding returns. On July 1, 1994 the Debtor submitted a second offer in compromise (the "Second OIC") which was again rejected, in part, because the Debtor had not filed all out-standing returns. After the Debtor submitted all of the necessary documentation, the IRS considered and ultimately refused to compromise the claim.

The Debtor claims to have signed the Debtor's 1040s, the First OIC and the Second OIC under penalty of perjury.

The Debtor also claims that the Debtor's 1040s were substantially different from the Substitute Returns. The Debtor's 1040's claimed less liability for tax years 1983–1985 and more liability for tax year 1986. On July 1, 1995, after the IRS had rejected the second OIC, the Debtor and the IRS entered into an installment agreement (the "Installment Agreement") for the tax years 1980, 1983–1986 and 1989. Under the Installment Agreement, the Debtor agreed to pay his assessed taxes totaling $132,502.87 at the rate of $500 per month. In 1997 the Debtor filed a Chapter 7 bankruptcy petition in Yuma, Arizona. On September 27, 1997 the Debtor filed this adversary proceeding seeking to discharge the taxes he was paying under the Installment Agreement.

The I.R.S. disputes the Debtor's claim that he properly filed with the IRS the First OIC, Second OIC, and the Debtor's 1040s (collectively, the "1994 Submissions"), but argues for the purposes of summary judgment that even if properly filed, the 1994 Submissions, and the Installment Agreement do not, as a matter of law, constitute a return.

DISCUSSION

On Summary Judgment, the moving party, must show that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R.Bankr.P. 7056; Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct., 2548, 91 L.Ed.2d 265 (1986). Thus the court views the facts and inferences from these facts in the light most favorable to nonmoving party. Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56; *See e.g., Ferguson v. City of Phoenix*, 931 F.Supp. 688 (D.Ariz.1996). However, where the moving party bases its motion on the allegation that the nonmoving party has failed to

---

1. There were additional issues related to tax years 1980, 1989, 1990 and 1992.

establish an essential element of its claim, the opposing party must go beyond the pleadings to designate specific facts which demonstrate that there is a genuine issue for trial. *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

■ The IRS bases its motion on the assertion that the Debtor failed to establish that the 1994 Submission are returns within the meaning of 523(a)(1)(B). In this circuit, bankruptcy courts must use the definition of return established in *Beard v. Commissioner,* 82 T.C. 766, 1984 WL 15573 (1984) *aff'd,* 793 F.2d 139 (6th Cir. 1986) to determine whether a debtor has filed a return under § 523(a)(1)(B). *In re Hatton,* 220 F.3d 1057, 1060 (9th Cir.2000). In order for a document to qualify as a return: "(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law," (the *Beard* Test). *Id.* at 1060, 1061, citing *In re Hindenlang,* 164 F.3d 1029, 1033 (6th Cir.1999). For the purposes of the summary judgment motion the IRS conceded that the 1994 Submission satisfied the first three elements of the *Beard* Test.

With respect to the fourth element of the Beard Test (the "Honest and Reasonable Requirement"), the IRS urges the court to adopt the bright line rule established by the 6th Circuit in *In re Hindenlang, supra,* and rule, as a matter of law, that a debtor may not ever discharge a tax debt after the IRS has prepared and filed a substitute return and assessed a deficiency.

The *Hindenlang* court found that submissions by a debtor filed after the IRS had prepared a substitute return and assessed a deficiency have no tax consequence and therefore such submissions are not a return under 523(a)(1)(B). *Hindenlang,* 164 F.3d at 1034. *Hindenlang* holds that 1040s submitted after a debtor has failed to respond to both, the thirty-day and the ninety-day deficiency letters sent by the IRS, and after the government has assessed the deficiency, serve no tax purpose because such late filed returns do not control the amount of the tax payer's liability, the statute of limitations regarding collection or the tax payer's potential liability for criminal and civil penalties. *Id* at 1034, 1035. Because the late filed returns have no effect under the Internal Revenue Code, the *Hindenlang* court found, as a matter of law, that such returns cannot meet the Honest and Reasonable Requirement.[2] (the *Hindenlang* Rule). *Id.*

The Debtor, however, urges the court to follow the 9th Circuit BAP decision in *In re Nunez,* 232 B.R. 778, (9th Cir. BAP 1999) which rejected the argument adopted in the *Hindenlang* Rule stating, that such a holding would have the absurd result of preventing a debtor for whom the IRS prepares substitute returns from ever discharging taxes. The *Nunez* court stated "We find nothing in the Bankruptcy Code that would lead us to adopt the IRS's argument." *Nunez,* 232 B.R. at 781 (9th Cir. BAP 1999), quoting, *In re Savage,* 218 B.R. 126, 132 (10th Cir. BAP 1998). The *Nunez* court instead, held that a 1040 meets the Honest and Reasonable Requirement if, on its face, it appears to be an honest and genuine endeavor to satisfy

---

**2.** The *Hindenlang* court left open the possibility that a 1040 submitted after the preparation of a substitute return and assessment might have a tax consequence if under the late re-

turn the debtor had a higher tax liability than under the substitute return. *Hindenlang,* 164 F.3d at 1034 Fn. 5.

the law, and the debtor submitted it with the subjective intent to comply with his tax law obligations. *Nunez*, 232 B.R. at 782, 783.

The IRS asserts that *Nunez* should not be followed by this court because it has been implicitly overruled by the 9th Circuit Court of Appeals in *Hatton*. The IRS reasons that because the *Hatton* court cited *Hindenlang* for the use of the Beard test, it also adopted the *Hindenlang* Rule that a post assessment 1040 cannot be a return under 523(a)(1)(B).

In *Hatton* the debtor was arguing that an installment agreement and the substitute returns prepared by the IRS were returns under § 523(a)(1). The *Hatton* court rejected the Debtor's contention because the documents were not executed under penalty of perjury and because the debtor's uncooperative behavior post assessment indicated that the submissions were not part of an honest and reasonable attempt to comply with the tax law. *Hatton*, 220 F.3d at 1061. Had the *Hatton* court adopted the *Hindenlang* Rule, it would not have needed to consider whether the Debtor had executed the submissions under penalty of perjury or the Debtor's subjective intent post assessment. The court would have simply determined that the debtor's post assessment submissions, could not as a matter of law, constitute returns under § 523(a)(1)(B).

■■■ This court will not, therefore, hold as a matter of law that after the IRS has prepared a substitute return and assessed a deficiency that a debtor can never meet the Honest and Reasonable Requirement of the *Beard* Test. Under the holdings of both *Nunez* and *Hatton*, the court concludes that each case should be reviewed on an individual basis and that the debtor should have an opportunity to make a specific factual showing that his or her late submissions were a reasonable attempt to comply with the tax law. Accord, *In re Hetzler*, 262 B.R. 47, 54 (Bankr. D.N.J.2001).

■■■ Having come to the conclusion that the IRS is not entitled to a bright line rule, the court must review the specific facts alleged by the Debtor that the 1994 Submission, specifically the Debtor's 1040s,[3] were an honest and reasonable attempt to comply with the tax law. The court must determine whether the submission of the Debtor's 1040's, which significantly differ from the Substitute Returns, and which were submitted in support of the Debtor's two offers in compromise represented an honest and reasonable attempt to comply with the tax law.

Consideration of offers in compromise are specifically authorized under the Internal Revenue Code at 26 U.S.C. § 7122. Furthermore the Code of Federal Regulations at 26 C.F.R. § 301.7122–1T (the "Regulation"), governing the I.R.S.'s administrative procedures for compromises, provides for three possible grounds for compromise: (1) doubt as to liability; (2) doubt as to collectability; and (3) promotion of effective tax administration.

With respect to doubt as to liability, the Regulation provides that "doubt as to liability exists where there is a genuine dispute as to the existence or amount of the correct tax liability under the law." 26 C.F.R. § 301.7122–1T(b)(2). 1040s submitted to the IRS as part of an offer in compromise based on doubt as to liability, which substantially differ from a substitute return prepared by the IRS could, in fact, have a tax consequence because a debtor may be correct as to his liability and so the

---

**3.** The Debtor's offers in compromise cannot be returns because they fail the first require-

ment of the Beard Test, offers in compromise do not purport to be returns.

amount of the tax the debtor must pay will differ from the amount assessed by the IRS based on the IRS filed substitute returns. The Regulation even provides that offers in compromise based on doubt as to liability are not to be rejected solely because the IRS cannot locate the taxpayer's returns or return information for verification of liability. 26 C.F.R. § 301.7122–1T(e)(4). Assuming that 1040's submitted as part of an offer in compromise based on a dispute as to liability provide complete information and are submitted with the right subjective intent, such late filed 1040's would meet the Honest and Reasonable Requirement of the *Beard* Test.

Doubt as to collectability, as described at 26 C.F.R. § 301.7122–1T(b)(3), involves an inquiry into the taxpayer's ability to pay an assessed tax. Similarly, promotion of effective administration, as described at 26 C.F.R. § 301.7122–1T(b)(4), involves demonstration of economic hardship and exceptional circumstances that mitigate against collection for fairness and public perception reasons. Although the IRS will not process such offers unless returns have been filed, (*See* IRS Form 6561) submitting 1040's with such offers does not have a tax consequence, even if significantly different from the substitute return. This is so because the amount of liability assessed for any particular tax year is not at issue. Instead, the issue is the ability to collect from a taxpayer, or the fairness of doing so at the time of the offer. 26 C.F.R. § 301.7122–1T(b)(3) & (4).

The copies of the First OIC and Second OIC submitted by the Debtor as exhibits to the affidavit of his accountant indicate that the Debtor's OIC's were based on doubt as to collectability, not doubt as to liability. The Debtor could not have been submitting the 1983–1986 1040s expecting them to have a tax consequence affecting his liability even if different from the Sub-

stitute Returns because he was basing his offer on the difficulty in collecting the assessments in 1994, not disputing his liability in 1983–1986.

The other facts which the Debtor asserts indicate his honest and reasonable effort to comply with the tax laws are insufficient to prevent granting the IRS summary judgment. The Debtor did not submit any evidence regarding the reasons for his failure to file returns from 1983–1986. *See Hetzler,* 262 B.R. at 54. Notwithstanding the Debtor's assertions that the IRS was not actively pursuing collection at the time of the 1994 Submissions, the IRS had recorded tax liens against the Debtor and sent the Debtor notices of a tax levy. The fact that the Debtor's 1040's were not mirror images of the Substitute Returns is insufficient to create a genuine issue of fact since the Debtor's OIC's were not based on a dispute about liability. The Debtor has failed to demonstrate that there is a material issue of fact which must be tried regarding the Debtor's honest and reasonable attempt to comply with the federal tax laws. Judgment will therefore be entered in favor of the IRS.

### JUDGMENT

Pending before the court is the Motion for Summary Judgment filed by the United States of America (the "United States"). The court having rendered its Memorandum Decision in the matter hereby orders:

The United States' Motion for Summary Judgment is granted. It is further ordered that the Debtor's 1983, 1984, 1985, 1986 federal income tax liabilities are nondischargeable. Dated this 10th day of July, 2001.