### In re Chester E. EHRIG, Debtor.

### Chester E. Ehrig, Plaintiff,

### v.

### United States of America, ex rel. Internal Revenue Service, Defendant.

### Bankruptcy No. 02–03828–R. Adversary No. 03–0142–R.

United States Bankruptcy Court, N.D. Oklahoma.

March 9, 2004.

---

Paul Tom, Tulsa, OK, for Plaintiff/Debtor.

Phyllis Jo Gervasio, Dept. of Justice Tax Division, Washington, DC, Phil Pinnell, Office of U.S. Attorney, Tulsa, OK, for Defendant.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF THE UNITED STATES AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DANA L. RASURE, Bankruptcy Judge.

Before the Court is the United States' Motion for Summary Judgment (Doc. 15) and the Memorandum in Support of the United States' Motion for Summary Judgment (Doc. 16), both filed by the United States of America *ex rel.* Internal Revenue Service (the "IRS") on December 3, 2003

(the "IRS Brief"); Plaintiff's Motion for Summary Judgment and Brief in Support of Motion (Doc. 17) filed by the Plaintiff/Debtor Chester E. Ehrig ("Ehrig") on December 19, 2003 ("Ehrig's Brief"); United States' Response to Plaintiff's Motion for Summary Judgment (Doc. 18) filed on January 6, 2004 (the "IRS Response"); Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment (Doc. 19) filed on January 8, 2004 ("Ehrig's Response"); and United States' Reply Brief (Doc. 20) filed on January 13, 2004.

## I. Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(I) and (O); and Miscellaneous Order No. 128 of the United States District Court for the Northern District of Oklahoma: Order of Referral of Bankruptcy Cases effective July 10, 1984, as amended.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (made applicable herein by Bankruptcy Rule 7056). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses [and] ... it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Substantive law determines which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* It is incumbent upon the non-movant to demonstrate that there are genuine issues of fact for trial. *See Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993).

"[A]t the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505. Reasonable inferences that may be made from the proffered evidentiary record should be drawn in favor of the non-moving party. *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000). However, "[i]f the [non-moving party's] evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Material Facts as to Which No Genuine Issue Exists

The parties filed cross-motions for summary judgment. Pursuant to Rule 7056(a) of the Local Rules of the United States Bankruptcy Court for the Northern District of Oklahoma ("Local Rules")–

A brief in support of a motion for summary judgment ... shall begin with a section that contains a concise statement of material facts as to which movant

contends no genuine issue exists. Each fact shall be stated in a separately numbered paragraph and shall refer with particularity to those portions of the affidavits, discovery materials, pleadings, or other parts of the record before the Court upon which the movant relies. Affidavits, discovery materials, and other relevant portions of the record upon which the movant relies shall be attached to the brief.

Local Rule 7056(a). The IRS Brief contains a statement of eight separately numbered material facts, supported by affidavits that identify and certify the authenticity of various official records of the IRS including a "Master Filed 'Literal' Transcript Account" for Ehrig for tax year 1990; a Statutory Notice of Deficiency dated April 4, 1997 that was issued to Ehrig relating to tax year 1990 to which was attached a form of a Notice of Deficiency Waiver and a Proposed Individual Income Tax Assessment for tax year 1990, including a Summary of Income Sources reported to the IRS in tax year 1990, a Tax Calculation Summary and an Explanation of Penalties and Interest; copies of a Form 1040 Individual Income Tax Return for tax year 1990 signed by Ehrig and dated June 5, 2000; and a "Letter 3340C Audit Reconsideration Denial" dated January 22, 2002, rejecting Ehrig's request to recalculate IRS's assessment for tax year 1990.

Local Rule 7056(b) requires that in responding to a motion for summary judgment, the non-movant's response brief—

shall begin with a section stating, by paragraph number, each of the movant's facts to which the non-movant contends a genuine issue exists, and shall refer with particularity to those portions of affidavits, discovery materials, pleadings, and other relevant parts of the record before the Court upon which the non-movant relies to dispute the movant's fact. All material facts set forth in the movant's statement shall be deemed admitted for the purpose of summary judgment unless specifically controverted by a statement of the non-movant that is supported by evidentiary material.

Local Rule 7056(b). In Ehrig's Response, Ehrig did not contest the IRS's statement of material facts, and therefore those facts are admitted by Ehrig for the purpose of adjudicating the IRS's summary judgment motion.

Ehrig's Brief contains thirteen separately numbered facts, supported by Ehrig's affidavit and by the documents attached to the IRS Brief. In the IRS Response, the IRS does not dispute Ehrig's statement of facts. Accordingly, the Court's sole task is to determine the legal consequences that flow from the following undisputed material facts.

Ehrig earned taxable income in 1990. In 1991, Ehrig filed an extension of time to file his 1990 federal income tax return until August 15, 1991. Ehrig failed to file a tax return for tax year 1990 on or before August 15, 1991. According to his affidavit, Ehrig suffered myriad reversals of fortune in 1991: his wife abandoned him and his son, his architecture business declined and eventually dissolved, his home was sold, and his car was repossessed. Ehrig Affidavit at ¶¶ 2–4.

On April 3, 1995, the IRS filed a "substitute for return" ("SFR") on behalf of Ehrig for tax year 1990, utilizing information reported to the IRS by entities that paid income to Ehrig in 1990. The IRS determined that Ehrig had adjusted gross income of $27,135.50, of which $22,360.00 was taxable, and of which $11,862.00 was subject to self-employment tax. IRS Exhibit A.

On April 4, 1997, the IRS issued a notice of deficiency to Ehrig for tax year 1990, advising Ehrig that he owed income tax in the amount of $5,971.00, a failure to file penalty in the amount of $1,492.75, and an estimated tax penalty in the amount of $393.15 (the "Deficiency Letter"). IRS Exhibit B. The Deficiency Letter provided notice of procedures to contest the amount of the deficiency, and advised that Ehrig had ninety days from the date of the Deficiency Letter to file a petition with the United States Tax Court to seek a redetermination. The Deficiency Letter further stated "the Court cannot consider your case if your petition is filed late." In the Deficiency Letter, the IRS also stated that if Ehrig decided not to file a petition for redetermination with the Tax Court, it requested that he sign an enclosed waiver form that would permit the IRS to "assess the deficiency quickly and ... limit the accumulation of interest." The IRS further advised that if Ehrig did not file a petition or sign the waiver, then the IRS was required to assess and bill him for the deficiency after the ninety day contest period expired.

The Court assumes that Ehrig did not file a petition with the Tax Court challenging the amount of the deficiency because on September 1, 1997, the IRS assessed the tax liability and penalties in the amounts stated in the Deficiency Letter plus interest in the amount of $5,245.58. IRS Exhibit A.

In 1999, Ehrig contacted the IRS and began the process of assembling and filing returns for years in which he failed to file, including tax years 1990, 1991, 1992, 1993, 1994, 1995 and 1996. Ehrig filed returns

for 1991–96 in 1999 and the IRS accepted those late returns and concurred with Ehrig's calculation of tax liability for those years. Ehrig's Brief at 2, ¶¶ 4–6. Thereafter, with the knowledge and cooperation of the IRS and others,[1] Ehrig attempted to reconstruct his 1990 income and expenses with the intention of filing an accurate return for tax year 1990. By that time, some sources and records had been lost or destroyed, however. Ehrig's Brief at 3, ¶ 7–10. On July 24, 2000, Ehrig submitted the Form 1040 Individual Income Tax Return for tax year 1990, which he signed under the penalty of perjury, and in which he reported negative adjusted gross income of $4,860, no taxable income, and a tax liability of zero. Ehrig's Brief at 4, ¶ 10; IRS Brief at 2, ¶ 5; and IRS Exhibit C.

The IRS posted the return on Ehrig's account as an amended return but processed it as an "audit reconsideration" of its original assessment. IRS Brief at 2, ¶ 6–7; IRS Exhibit A. By letter dated January 22, 2002, the IRS advised Ehrig that it "determined that [it] should not change the original audit assessment amount" and disallowed Ehrig's proposed recalculation of tax liability for failure to "report all world wide income." IRS Exhibit D. The letter further advised that if Ehrig disagreed with the IRS's decision, he could request an appeals ·conference or file a formal written protest. The record does not show that Ehrig did either.

Ehrig's 1990 return discloses all income previously reported to the IRS by the payors, and an additional $401. Ehrig allocated the income differently than the IRS did in its SFR. Ehrig's Brief at 3–4,

---

**1.** In his affidavit and brief, Ehrig details his communication and interaction with IRS revenue officers during the period in which Ehrig attempted to create a return that accurately reported his income and expenses for tax

year 1990. The IRS does not contest that in 2000, Ehrig diligently attempted to obtain data necessary to file a return for the tax year 1990 and that the IRS assisted in this endeavor by providing income information to Ehrig.

¶¶ 11, 12. Ehrig contends that his tax liability is more accurately determined in his 1990 return than in the SFR because the IRS did not take into consideration Ehrig's correct filing status (head of household rather than married filing separately) or his business expenses. Ehrig reported a lower mortgage interest deduction and more income from his architectural business than the IRS considered in determining Ehrig's tax liability in the SFR. Ehrig argues that the fact that he reported more income and, in some cases, lower deductions than the IRS had estimated in the SFR demonstrates Ehrig's good faith effort to file an accurate return for tax year 1990 and thus to comply with the tax laws.

On August 7, 2002, more than two years after he submitted the 1990 return to the IRS, Ehrig filed a petition under chapter 7 of the Bankruptcy Code. As of the petition date, Ehrig's 1990 tax liability, including penalties and interest, was approximately $22,000 (the "1990 Tax Liability"). IRS Exhibit A; Complaint at ¶ 6.

## IV. Conclusions of law

Ehrig seeks to discharge the 1990 Tax Liability, contending that it does not fall within the ambit of non-dischargeable taxes defined in Section 523(a)(1). Section 523(a)(1) states–

A discharge under section 727 ... of this title does not discharge an individual from any debt—

(1) for a tax ...

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required–

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1).

### A. Non-dischargeability under Section 523(a)(1)(A)

Ehrig contends that the undisputed facts establish that the 1990 Tax Liability is not non-dischargeable under Section 523(a)(1)(A) because it is not a priority tax claim under Section 507(a)(2) or (a)(8). Section 507(a)(2), which refers to claims arising in an involuntary case, is inapplicable. Section 507(a)(8) grants priority to certain unsecured claims of governmental units; subparagraph (A) specifically relates to claims for income taxes. Generally, this section confers priority (and consequently, under Section 523(a)(1), non-dischargeability) to claims for (1) income taxes for tax years in which a return was due less than three years prior to the petition date, (2) income taxes assessed within 240 days of the petition date, and (3) income taxes not assessed before the petition date which become assessable after the petition date. The undisputed facts establish that the 1990 Tax Liability is not a priority claim under Section 507(a)(8) and therefore is not non-dischargeable under Section 523(a)(1)(A).

### B. Non-dischargeability under Section 523(a)(1)(B)

The IRS asserts and seeks summary judgment on the ground that the 1990 Tax Liability is non-dischargeable under Section 523(a)(1)(B)(i) because it consists of taxes "with respect to which a return, if

required ... was not filed." Ehrig contends that the 1990 Tax Liability is not non-dischargeable under Section 523(a)(1)(B)(i) (for failure to file a return) because he did file a 1990 tax return, albeit nine years after it was due. Furthermore, the return was filed in 2000, more than two years before Ehrig filed his petition for bankruptcy relief, eliminating Section 523(a)(1)(B)(ii) as a ground for barring discharge.

■ At first blush, it appears that two returns were filed for tax year 1990—the SFR and the Form 1040 Ehrig filed in 2000. Whether the SFR filed by the IRS qualifies as a "return" contemplated by Section 523(a)(1)(B)(i) was settled by the Tenth Circuit Court of Appeals in *Bergstrom v. United States (In re Bergstrom)*, 949 F.2d 341 (10th Cir.1991). A "substitute for return" is a means by which the IRS may prepare a return for a taxpayer when the taxpayer fails to file a return as required by 26 U.S.C. § 6012.[2] The authority for the preparation of returns by the IRS, through the Secretary of Treasury, is found in 26 U.S.C. § 6020, entitled "Returns prepared for or executed by Secretary," which provides—

(a) Preparation of return by Secretary. If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

(b) Execution of return by Secretary.

(1) Authority of Secretary to execute return. If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

(2) Status of returns. Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

26 U.S.C. § 6020.

■ The statute thus allows the Secretary to prepare, from such information as the Secretary is able to obtain, a "substitute for return" for any person who fails to timely file a return, but the statute does not *require* the Secretary to file a substitute for return for every non-filing taxpayer, and therefore no taxpayer is excused from its statutory obligation to file a return by virtue of this section. *Bergstrom*, 949 F.2d at 343, *citing Moore v. C.I.R.*, 722 F.2d 193, 196 (5th Cir.1984). "[T]he purpose of section 6020(b)(1) is to provide the Internal Revenue Service with a mechanism for assessing the civil liability of a taxpayer who has failed to file a return, not to excuse that taxpayer from criminal liability which results from that failure." *Id.* at 343, *quoting United States v. Lacy*, 658 F.2d 396, 397 (5th Cir.1981). The substitute for return is effective as a return in those circumstances when a return is necessary for the IRS to act (*i.e.,* for the purpose of assessment, collection, levy),

**2.** Section 6012(a) states the general rule that—

Returns with respect to income taxes under subtitle A shall be made by the following:

(1)(A) Every individual having for the taxable year gross income which equals or exceeds the exemption amount.

26 U.S.C. § 6012(a). Ehrig does not argue that he was exempt from filing a return for tax year 1990 under this section.

but, according to the Tenth Circuit, its existence does not shield the non-filing taxpayer from the consequences of failing to file. The statute was designed to advance the mission of the IRS, not to benefit the non-filing taxpayer. For this reason, courts, including the Tenth Circuit in *Bergstrom,* have held that "in the absence of the signature of the taxpayer," substitutes for returns prepared and executed by the Secretary do not constitute filed returns under Section 523(a)(1)(B)(i).[3] *Bergstrom,* 949 F.2d at 343. *See also United States v. Hatton (In re Hatton),* 220 F.3d 1057, 1060 (9th Cir.2000), *quoting California Franchise Tax Bd. v. Jackson (In re Jackson),* 184 F.3d 1046, 1052 (9th Cir.1999) ("the purpose behind section 523(a)(1) [is that] 'a debtor should not be permitted to discharge a tax liability based upon a required tax return that was never filed [by the taxpayer]' "); *United States v. Ralph,* 266 B.R. 217, 219 (M.D.Fla.2001); *Gentry v. United States,* 223 B.R. 127, 129 (M.D.Tenn.1998); *Swanson v. Commissioner,* 121 T.C. 111, 123–24, 2003 WL 22020782 (2003). Thus, it is well settled that the SFR filed by the IRS does not constitute a filed return for the purpose of avoiding the application of Section 523(a)(1)(B)(i) to issue of dischargeability of the 1990 Tax Liability.

◼ Accordingly, the Court must consider the second candidate for "return" under Section 523(a)(1)(B)(i)—the Form 1040 prepared and submitted by Ehrig in July 2000. Preliminarily, the language of the statute raises the question of whether a return is even "required" after a substitute for return has been filed by the IRS. The statute provides that a tax is not dischargeable if "with respect to which a return, *if required,* . . . was not filed." 11 U.S.C. § 523(a)(1)(B)(i)(emphasis added). If a taxpayer has an obligation to file a return and does not file a return, and because of the taxpayer's dereliction, the IRS devotes resources to gathering income information and filing a substitute for return for the purpose of assessing tax liability, and according to Section 6020(b)(2), the IRS is entitled to consider the substitute for return "prima facie good and sufficient for all legal purposes," then, arguably, there is no longer any reason for a taxpayer to file a return. Some courts have interpreted Section 523(a)(1)(B)(i) as precluding a taxpayer from redeeming itself from the non-dischargeability consequence of failing to file by filing a return after a substitute for return has been filed by the IRS and tax liability has been assessed. *See, e.g., Miniuk v. United States (In re Miniuk),* 297 B.R. 532, 541 (Bankr. N.D.Ill.2003) (taxes were non-dischargeable for failure to file a return notwithstanding that debtor filed a post-assessment return, because the later return was no longer "required"); *Walsh v. United States (In re Walsh),* 260 B.R. 142 (Bankr. D.Minn.2001), *aff'd* 2002 WL 1058073 (D.Minn.). The court in *Walsh* explained—

Once an involuntary government-made assessment is final, then, the taxpayer no longer can use the perfunctory expedient of filing belated voluntary returns to subject a now-stale tax claim to discharge in bankruptcy. As here, such an action only duplicates a process completed under law, to no identifiable purpose in the government's revenue function.

---

3. Substitutes for return filed by the IRS under Section 6020(a), which are prepared by the Secretary with the participation and cooperation of the taxpayer, and are executed by the taxpayer, may therefore qualify as returns under Section 523(a)(1)(B)(i). In this case, the SFR was prepared using sources other than Ehrig, and Ehrig did not execute or adopt the SFR. Since the SFR was not prepared pursuant to Section 6020(a), it cannot enjoy the status of a "return."

As a taxpayer, such a debtor may still have the option of paying and then proving in a suit for refund that he was in fact not liable for the taxes. This would be a matter of the merits, under tax law. By inaction that forces the taxing authority through involuntary assessment, however, such a debtor forfeits the right to discharge the liability in bankruptcy.

*Walsh,* 260 B.R. at 151.[4]

The Court finds this construction of the statute persuasive. Although Ehrig submitted a Form 1040 in 2000, the IRS had already completed its tax assessment function. Prior to assessment, Ehrig chose not to respond to the Deficiency Letter containing the notice of proposed assessment and did not seek a redetermination by filing a petition in Tax Court. After assessment, Ehrig's remedy for the perceived inaccurate assessment was limited-he was obligated to first pay the assessed amount and then commence a suit for a refund. Ehrig chose not to avail himself of the authorized avenues of appeal, but instead sought to renegotiate the amount of the assessment by a method not recognized by the tax code or regulations—by submitting a return nine years after it was due. This return was not only "not required," it had no legal sanction or effect. Thus, the Court concludes that since no return was required, the return Ehrig filed in 2000 was a nullity and did not cure his non-filing status for the purpose of Section 523(a)(1)(B)(i).

Ehrig fares no better under an alternative interpretation of the statute that has been adopted by several appellate courts addressing this issue. Rather than focusing on the "if required" prong of the statute, these appellate courts have concluded that a return filed by a taxpayer subsequent to the filing of a substitute for return by the IRS is not a "return" as that term is used in Section 523(a)(1)(B)(i). These courts turn to the widely accepted definition of "return" derived from two United States Supreme Court cases: *Germantown Trust Co. v. Commissioner,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940) and *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934). *See, e.g., United States v. Hindenlang (In re Hindenlang),* 164 F.3d 1029, 1033 (6th Cir.), *cert. denied* 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999). Under the *Germantown/Zellerbach* definition, for a document to qualify as a "return," it must (1) purport to be a return; (2) be executed under penalty of perjury; (3) contain sufficient data to allow calculation of tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law. *See Hindenlang,* 164 F.3d at 1033, *quoting United States v. Hindenlang (In re Hindenlang),* 214 B.R. 847, 848 (S.D.Ohio 1997).[5]

---

4. In reviewing the legislative history of Section 523(a)(1)(B) in order to divine its intent, the court identified three policies sought to be served and balanced by the rules governing discharge of taxes: (1) preservation of the integrity of the tax system through voluntary assessment; (2) elimination of "an excessive accumulation of taxes for past years" for the benefit of the taxpayer's other creditors; and (3) promotion of the concept of a "fresh start" to honest debtors. *Walsh,* 260 B.R. at 148. The court discerned that Congress did not intend to allow a debtor who contributed to the "staleness" of tax claims "by some wrongdoing or serious fault in the process of voluntary assessment" to discharge those tax claims. *Id.* (internal quotes omitted). "The import of legislative history is clear: the voluntary filing of personal income tax returns is an essential step in the assessment process that must be encouraged. Section 523(a)(1)(B)(i) must be construed to promote it. Applying the penalty of nondischargeability to debtors who have failed to follow filing requirements provides a strong deterrent to others." *Id.* at 148–49.

5. In some circuits, the *Germantown/Zellerbach* test is referred to as the *Beard* test since the Tax Court in the case of *Beard v. Commis-*

The facts in *Hindenlang* are materially indistinguishable from the facts in this case. In *Hindenlang*, the debtor failed to file tax returns for three years. After the debtor did not respond to notices of proposed deficiencies, the IRS prepared substitute returns and sent them to the debtor, who chose not to execute the substitute returns or consent to the liability calculated therein. The IRS sent deficiency letters notifying the debtor of the proposed tax liability and the right to contest the liability within ninety days by filing a petition in the Tax Court. After ninety days expired without a challenge by the debtor, the IRS assessed the liability against the debtor. *Hindenlang*, 164 F.3d at 1031. Two years later, the debtor prepared tax returns for the delinquent years and sent them to the IRS, but did not pay the tax liability.[6] More than two years later, the debtor filed a petition for relief under chapter 7 of the Bankruptcy Code and sought a determination that the tax liability was not non-dischargeable under Section 523(a)(1)(B). The IRS's sole argument was that "once a taxpayer has been assessed a deficiency, a Form 1040 submitted by the taxpayer to the IRS no longer qualifies as a return under § 523(a)(1)(B) of the Bankruptcy Code." *Id.* at 1032. This argument compelled the Sixth Circuit Court of Appeals to examine what constitutes a "return" for the purpose of this statute. Quoting the United States Supreme Court, the Sixth Circuit panel stated-

"[t]he purpose [of the return] is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished." *Commissioner v. Lane–Wells Co.*, 321 U.S. 219, 223[, 64 S.Ct. 511, 88 L.Ed. 684] ... (1944). "[I]t is clear that the existing tax system could not function properly if the great majority of taxpayers did not report the correct amount of tax without the government's prior determination of tax liability." BERNARD WOLFMAN, JAMES P. HOLDEN, KENNETH L. HARRIS, STANDARDS OF TAX PRACTICE § 201 (1995).

*Hindenlang*, 164 F.3d at 1033. With those principles in mind, the Sixth Circuit tested the debtor's return against the *Germantown/Zellerbach* factors and found that the debtor's post-assessment return satisfied the first three components: it purported to be a return, it was signed under penalty of perjury, and it included all the information needed to calculate the debtor's tax liability. *Id.* at 1034. The dispositive issue was whether the debtor's post-SFR return was an "honest and reasonable attempt to satisfy the requirements of the tax law." *Id.* The Sixth Circuit held "as a matter of law that a Form 1040 is not a return if it no longer serves any tax purpose or has any

---

*sioner*, 82 T.C. 766, 1984 WL 15573 (1984), *aff'd* 793 F.2d 139 (6th Cir.1986), first synthesized the elements and announced the definition. *See Swanson v. Commissioner*, 121 T.C. 111, 122, 2003 WL 22020782 (2003).

**6.** In *Hindenlang*, the debtor reported substantially the same income and tax liability on his late return that the IRS reported on its substitute for return. The return filed by Ehrig in 2000, however, contained more information than the IRS included on the SFR, primarily deductions that the IRS did not know about

or consider, which resulted in the elimination of all tax liability according to Ehrig's calculations. The Court does not believe that this distinction is relevant in analyzing the effect of filing a post-SFR return by a debtor. As hereinafter explained, filing a return only after the IRS has prepared a return and assessed tax in an amount with which the taxpayer disagrees (rather than challenging the deficiency or assessment in a timely manner) is not necessarily indicative of honest efforts to comply with the tax laws.

effect under the Internal Revenue Code." *Id.* "Once the government shows that a Form 1040 submitted after an assessment can serve no purpose under the tax law, the government has met its burden." *Id.* Because the debtor filed a return only after the IRS sent, and received no response or challenge to, thirty-day and ninety-day deficiency letters, filed substitutes for returns and assessed the tax liability, the panel concluded that the Form 1040 filed by the debtor had no meaningful effect and "served no tax purpose." *Id.* at 1034–35.[7] The court noted that the post-SFR return did not extend statutes of limitation, did not mitigate or release the debtor from civil or criminal liability for failure to file, or eliminate penalties. Thus, the Court concluded, the return was not an honest or reasonable attempt to satisfy the tax laws. The only effect of the return was potentially creating a condition under which otherwise nondischargeable tax debt could be discharged. "Nothing in § 523(a)(1) of the Bankruptcy Code suggests that a document that does not qualify as a return under the Internal Revenue Code should nonetheless qualify as a return for purposes of bankruptcy discharge. Such a result would create an unjustifiable inconsistency in the law." *Id.* at 1035.

Ehrig argues that the *Hindenlang* case is distinguishable because the return he filed did not merely parrot the SFR as did Hindenlang's, but contained the fruits of his good faith and diligent investigation and research into his 1990 income and expenses, which resulted in a return that more accurately depicted his tax liability than the SFR. This raises the question: If the debtor files a return only for the purpose of minimizing already assessed tax liability, is that an "honest and reasonable attempt to satisfy the requirements of the tax law?" The Fourth Circuit Court of Appeals addressed this precise issue in *Moroney v. United States (In re Moroney)*, 352 F.3d 902 (4th Cir.2003).

Again, the facts in *Moroney* are familiar. Upon the failure of the debtor to timely file tax returns, the IRS prepared substitutes for returns in order to determine and assess the debtor's tax liability. *Id.* at 903–04. Several years after the assessment, the debtor filed returns that reflected a lower tax liability. *Id.* at 904. The IRS reduced the assessment pursuant to the debtor's late filed returns. *Id.* More than two years later, the debtor sought bankruptcy relief. The IRS contended that the recalculated tax debt was nondischargeable pursuant to Section 523(a)(1)(B)(i). The issue on appeal was whether, under these circumstances, the debtor's late filed forms were "returns" for the purposes of Section 523(a)(1)(B)(i). *Id.* at 905.

---

**7.** The court footnoted the IRS's position that a post-SFR, post-assessment return filed by a debtor might serve a tax purpose if it revealed a greater tax liability than the IRS calculated, but declined to comment on whether that circumstance would be sufficient to imbue the debtor's efforts to comply with tax law with the requisite sincerity and diligence. *Id.* at 1034 n. 5. Thus, contrary to Ehrig's assertion that the *Hindenlang* court "set down a bright line rule holding that a return which is filed after an SFR assessment cannot as a matter of law constitute an honest attempt to comply with the requirements of the tax law" and that the court "cuts off any attempt by a Debtor to prove his return was filed in good faith," the court did leave the door to proving good faith compliance slightly ajar. Ehrig's Response at 4, and at n. 5. *See also Miniuk v. United States (In re Miniuk)*, 297 B.R. 532, 538 (Bankr.N.D.Ill.2003) ("The Sixth Circuit did not declare that a return filed post-assessment could never satisfy the requirements of Section 523(a)(1)(B)(i). Instead, the court simply established that a fact-based inquiry would in most instances be necessary to resolve the dischargeability issue.").

Applying the *Germantown/Zellerbach* test, the issue was again reduced to whether the debtor's returns constituted a reasonable and honest effort to comply with tax laws. The debtor contended that the court should examine the diligence and good faith of the debtor's efforts to satisfy the tax laws as of the time he filed his late returns. The IRS asserted that when a taxpayer files a return only after the IRS has already invested resources in preparing substitutes for returns, notifying of deficiencies and assessing the tax, and the taxpayer files for the purpose of obtaining a reduction in the assessment, the taxpayer has not honestly and reasonably attempted to comply with the tax laws. *Id.* at 905. The Fourth Circuit agreed with the IRS, concluding that "a debtor's delinquency is relevant to determining whether the debtor has filed a return. The very essence of our system of taxation lies in the self-reporting and self-assessment of one's tax liabilities." *Id.* at 906. Further,

[a] reporting form filed after the IRS has completed the burdensome process of assessment without any assistance from the taxpayer does not serve the basic purpose of tax returns: to self-report to the IRS sufficient information that the returns may be readily processed and verified.... Simply put, to belatedly accept responsibility for one's tax liabilities, only when the IRS has left one with no other choice, is hardly how honest and reasonable taxpayers attempt to comply with the tax code.

*Id.* (citations omitted). *Cf. United States v. Hatton (In re Hatton),* 220 F.3d 1057, 1061 (9th Cir.2000)(finding that a substitute for return was not a "return" under Section 523(a)(1)(B)(i) because taxpayer's "belated acceptance of responsibility [by executing an installment agreement and accepting without objection the assessed liability after the IRS filed a substitute for return] ... does not constitute a reason-able attempt to comply with the requirements of the tax law").

The debtor in *Moroney* argued that because the IRS accepted his returns and reduced his tax liability accordingly, the IRS itself admitted the honesty and accuracy of the returns. The court concluded, however, that "Moroney's argument misses the point. The relevant inquiry is whether Moroney made an honest and reasonable effort to comply with the tax law, not whether Moroney's eventual effort had some effect on his tax liability." *Moroney,* 352 F.3d at 906.

Under Moroney's approach, the availability of discharge would turn on the IRS's accuracy in assessing taxes, rather than on Moroney's sincerity and diligence in complying with the tax code. In effect, Moroney failed to provide the IRS with the very information it needed to accurately assess his taxes, and now he seeks to benefit from the IRS's resulting imprecision (which was hardly surprising, given Moroney's lack of assistance). Moroney's approach would only discourage the IRS from abating debtors' tax liabilities—especially when any adjustment, no matter how small, would lead to a discharge of the entire tax liability, no matter how late.

*Id.* at 906. The court held that the debtor, "too busy for no less than six years, to file returns, and whose ultimate filing was merely an attempt to lessen the liability that he never wanted to assume," did not file a return "in any meaningful sense of that word." *Id.* at 907. The court refused to declare, however, that a post-SFR, post-assessment filing could *never* be deemed a "return" for the purposes of Section 523(a)(1)(B)(i), again contemplating that a late filed accurate return might actually result in an increase of the tax liability, recognizing, however, that such a filing might also be a dishonest attempt to ma-

nipulate the facts in order to create conditions necessary to discharge the tax.

Ehrig claims that *Moroney,* too, is distinguishable, because unlike Moroney, who the court found "too busy" to file, Ehrig explained the circumstances that caused his "delay" in filing, which included a divorce, job loss, loss of home and car, and the attendant distress. The Court sympathizes with Ehrig's plight, but concludes as a matter of law that these hardships, which befall large segments of the population at some time or another in their taxpaying careers, cannot excuse a failure to file a return for nine years.[8]

■ Ehrig also urges the Court to judge his good faith in attempting to comply with tax laws by reviewing his efforts immediately preceding the filing of the belated return, as some bankruptcy courts have. *See, e.g., United States v. Nunez (In re Nunez),* 232 B.R. 778, 783 (9th Cir. BAP 1999) (focusing the good faith inquiry on the debtor's intent at the time of filing); *Crawley v. United States (In re Crawley),* 244 B.R. 121, 127–28 (Bankr.N.D.Ill.2000) (same). The Court concludes, however, that the inquiry into honesty and good faith in complying with the tax laws must encompass the entire period during which a return was outstanding, beginning at the time the return was originally due.[9] A deathbed conversion from being a chronic non-filer to an earnest (but late) filer does not serve the policy of uniform, timely and accurate self-reporting upon which the tax system is based.

Ehrig asserts that notwithstanding the logic and appeal of the *Hindenlang* and *Moroney* analyses, this Court is constrained to follow the precedent set by the Bankruptcy Appellate Panel for the Tenth Circuit Court of Appeals in *Savage v. IRS (In re Savage),* 218 B.R. 126 (10th Cir. BAP 1998). In *Savage,* the IRS filed substitutes for returns for a non-filing debtor and issued notices of deficiency affording the debtor ninety days to seek reconsideration by the Tax Court. The debtor did not challenge the deficiency and the IRS assessed the taxes. *Id.* at 128. Years later, the debtor, who resided in Wyoming, prepared and delivered certain post-assessment returns to the regional IRS office located in Oregon although the regional office assigned to residents of Wyoming is in Ogden, Utah, and delivered other post-assessment returns to the Ogden regional office. The returns were accepted and processed as amended returns and tax was assessed pursuant to the amended returns. More than two years later, the debtor filed bankruptcy and sought a declaration that the taxes were discharged.

The first issue on appeal was whether the returns delivered to the wrong regional office could be considered "filed" for the purpose of applying Section 523(a)(1)(B)(i). *Id.* at 129. The Bankruptcy Appellate Panel concluded that merely delivering a return to any local IRS office or any regional IRS service center did not consti-

---

8. The Court also notes that seeking to reduce tax liability by filing a post-SFR return subverts the protest and appeals processes established by the tax code and regulations. In 1997, six years after the 1990 return was due, Ehrig could have challenged the accuracy of the SFR and the assessed tax liability during the ninety day contest period outlined in the deficiency letter, by filing a petition in Tax Court. Instead, Ehrig did nothing. It was not until 1999 that Ehrig became seriously interested in observing his obligations under the tax laws.

9. Arguably, according to the *Walsh* and *Miniuk* decisions, after assessment, a return is no longer due and efforts made by a debtor to file a return at that point cannot be attempts to comply with the law but instead constitute attempts to minimize or eliminate (discharge) tax liability.

tute a "filing"; the tax code required that the return be received by a particular office or service center to qualify as a "filed" return. *Id.* at 131. Thus, the panel held that the taxes assessed for the years in which returns were not properly filed were non-dischargeable. *Id.*

The second issue in *Savage* was whether taxes assessed pursuant to the post-assessment returns filed in the proper office and treated by the IRS as amended returns were dischargeable. The panel framed the issue as "whether the Debtor's amended returns, filed after the IRS's substitutes for return, are 'returns' under § 523(a)(1)(B)(i)." *Id.* at 131. Surveying existing bankruptcy and district court cases on the issue, the panel acknowledged that courts were split, but quoted extensively and with apparent approval from the bankruptcy court's opinion in *Hindenlang v. United States (In re Hindenlang)*, 205 B.R. 874 (Bankr.S.D.Ohio), *aff'd* 214 B.R. 847 (S.D.Ohio 1997), *rev'd* 164 F.3d 1029 (6th Cir.), *cert. denied* 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999), for the proposition that Section 523(a)(1)(B)(i) does not specifically mandate that taxes sought to be discharged be based upon a return filed *prior to assessment* by the IRS. *Savage*, 218 B.R. at 132. The bankruptcy court in *Hindenlang* maintained that the only condition to discharge provided in the statute relating to the *time* of filing a return was the two-year rule, which requires that the return be filed more than two years prepetition. *Id.* The panel agreed with the *Hindenlang* bankruptcy court's reasoning, further concluding that the IRS's position, that a document filed subsequent to assessment pursuant to a substitute for return could never be a "filed return" under Section 523(a)(1)(B)(i) "would lead to absurd results," particularly that "a debtor, for whom the IRS prepares substitute returns, could never discharge taxes." *Id.* at 132.[10]

As established above, however, the bankruptcy court's opinion in *Hindenlang* was subsequently reversed by the Sixth Circuit Court of Appeals, *see United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1033 (6th Cir.), *cert. denied* 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999), casting doubt upon the current vitality of *Savage*, as the panel may have been persuaded toward a contrary conclusion by the Sixth Circuit's opinion.[11] In any event, the panel in *Savage* consciously

---

**10.** A handful of courts agree with *Savage* that Section 523(a)(1)(B)'s two year rule is the exclusive time limitation affecting recognition of a return for the purpose of determining dischargeability on the ground that a return was not filed. *See, e.g., United States v. Nunez (In re Nunez)*, 232 B.R. 778, 783 (9th Cir. BAP 1999); *Woods v. IRS (In re Woods)*, 285 B.R. 284, 289 (Bankr.S.D.Ind.2002); *Crawley v. United States (In re Crawley)*, 244 B.R. 121, 127 (Bankr.N.D.Ill.2000); *Ralph v. United States (In re Ralph)*, 258 B.R. 504, 509 (Bankr.M.D.Fla.2000), *rev'd* 266 B.R. 217 (M.D.Fla.2001). *But see Miniuk v. United States (In re Miniuk)*, 297 B.R. 532, 540 (Bankr.N.D.Ill.2003) (expressly declining to follow *Savage* or *Nunez*); *Walsh v. United States (In re Walsh)*, 260 B.R. 142, 151 (Bankr.D.Minn.2001), *aff'd* 2002 WL 1058073 (D.Minn.) (examining the good faith of a debtor's efforts to comply with tax laws by filing a return after a return is *no longer required* leads to absurd results).

Other courts recognize that the Sixth Circuit's decision in *Hindenlang* does not "engraft a[n] [additional] timing requirement onto § 523(a)(1)(B)" but rather "instructs that the determination of whether a debtor's submission to the IRS constitutes a 'return' . . . must take into account whether that submission would qualify as a return for any purpose under the Internal Revenue Code." *United States v. Pierchoski (In re Pierchoski)*, 243 B.R. 267, 271 (W.D.Pa.1999).

**11.** In *United States v. Pierchoski (In re Pierchoski)*, 243 B.R. 267 (W.D.Pa.1999), the district court reversed a bankruptcy court that had, like the panel in *Savage*, relied upon the lower court opinions in the *Hindenlang* case

narrowed the applicability of its holding, leaving for another day a decision on the issue of whether a post-assessment return qualifies as a "return" under the *Germantown/Zellerbach* test.

> [W]e note that numerous courts have relied on the definition of "return" established by the Supreme Court in *Germantown Trust Co. v. Commissioner,* 309 U.S. 304[, 60 S.Ct. 566, 84 L.Ed. 770] ... (1940), and *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172[, 55 S.Ct. 127, 79 L.Ed. 264] ... (1934), to determine whether a document is a "return" under § 523(a)(1)(B). [citations omitted]. Under these cases, a document must: (1) purport to be a return; (2) be sworn to as such, under penalties of perjury; (3) contain sufficient data to allow calculation of tax; and (4) appear on its face to constitute an honest and genuine endeavor to satisfy the law.... We cannot use this definition in this case, however, as the IRS, the party with the burden of proving the Debtor's debts to be nondischargeable, apparently did not raise this argument before the Bankruptcy Court. As a result and because it involves factual inquires that are beyond the scope of the appellate record, we will not address it in this case.

*Id.* at 132–33. Any pronouncement in *Savage* regarding the sufficiency of a document as a "return" under the *Germantown/Zellerbach* definition is clearly dicta and this Court is not bound by dicta.[12] Nonetheless, Ehrig argues that the Bankruptcy Appellate Panel's statement of the *Germantown/Zellerbach* test indicates that the Tenth Circuit has adopted the definition as set forth in *Savage* and that it is this statement of the definition that this Court must apply. Ehrig's Brief at 4. The last factor recited in *Savage,* that the document that purports to be a return must *"appear on its face* to constitute an honest and genuine endeavor to satisfy the law," seems to require a less stringent examination of the conduct of the debtor than that factor has been interpreted by other courts. *See, e.g., United States v. Hatton (In re Hatton),* 220 F.3d 1057, 1060–61 (9th Cir.2000)(the document must "represent an honest and reasonable attempt to satisfy the requirements of the tax law"); *Swanson v. Commissioner,* 121 T.C. 111, 122, 2003 WL 22020782 (2003) (same); *Miniuk v. United States (In re Miniuk),* 297 B.R. 532, 536 n. 9 (Bankr.N.D.Ill.2003) (same); *Crawley v. United States (In re Crawley),* 244 B.R. 121, 127–28 (Bankr. N.D.Ill.2000) (same); *Rushing v. United*

to conclude that a debtor's tax debts were dischargeable. During the pendency of the appeal in *Pierchoski,* the Sixth Circuit reversed the lower courts in *Hindenlang* and established the rule that to qualify as a return, a filing must serve some tax purpose. The district court in *Pierchoski* thus remanded the matter for a determination of whether the post-assessment returns filed by the debtor had any tax purpose. *Id.* at 267. On remand, the bankruptcy court concluded that the post-assessment returns served no tax-related purpose and accordingly held that the debtor had not filed a "return" and that the tax liability was therefore non-dischargeable. *Pierchoski v. United States (In re Pierchoski),* 243 B.R. 639 (Bankr.W.D.Pa.1999).

**12.** "Dictum is 'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it.'" *OXY USA, Inc. v. Babbitt,* 230 F.3d 1178, 1184 (10th Cir.2000) (vacated on other grounds), *quoting United States v. Crawley,* 837 F.2d 291–292 (7th Cir.1988). "[I]t is 'well established' that '[b]road language in an opinion, which language is unnecessary to the court's decision, cannot be considered binding authority."*OXY USA, Inc.,* 230 F.3d at 1185, *quoting Smith v. Orr,* 855 F.2d 1544, 1550 (Fed.Cir.1988) (citing *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)).

*States (In re Rushing)*, 273 B.R. 223, 226 (Bankr.D.Ariz.2001) (same). *But see United States v. Nunez (In re Nunez)*, 232 B.R. 778, 783 (9th Cir. BAP 1999) (adopts *Savage's* "on its face" language; arguably overruled by *Hatton, supra*); *United States v. Ralph*, 266 B.R. 217, 219 (M.D.Fla.2001) (uses "appear on its face" language, but concluded that even returns on proper forms were not "returns" if they served no tax purpose).

■ Pursuant to the *Savage* definition, Ehrig would have the Court examine the document itself to determine whether it appears to contain sufficient relevant information to compute a tax. Under Ehrig's interpretation, only the appearance and content of the document are relevant. The courts in *Hindenlang* and *Moroney*, however, place great weight on the history and behavior of the taxpayer and the circumstances under which the document was filed. Indeed, limiting the inquiry to the face of the document would render the fourth factor redundant since the first factor requires that the document "purport to be a return" and the third factor requires the document to contain sufficient data to calculate tax liability. The Court also notes that the original articulation of this element by the Tax Court in *Beard v. Commissioner*, 82 T.C. 766, 777, 1984 WL 15573 (1984), *aff'd* 793 F.2d 139 (6th Cir. 1986)*i.e.*, "there must be an honest and reasonable attempt to satisfy the requirements of the tax law"-did not restrict the investigation into "honest and reasonable attempts" to an examination of the face of the document. In any event, because the panel in *Savage* declined to address whether the *Germantown/Zellerbach* definition of a "return" was even applicable to determine the validity of a post-assessment return for dischargeability purposes, its statement of the definition is not precedential.

The Court concludes that the document Ehrig submitted to the IRS in 2000 for tax year 1990, the accuracy of which was ultimately rejected by the IRS, although it may have been as accurate as was possible after such an extended delay, was a self-serving attempt to reduce his tax liability after the IRS (1) prepared and filed an SFR without the cooperation of Ehrig, (2) sent a notice of deficiency, to which Ehrig failed to respond, (3) assessed the 1990 Tax Liability, which Ehrig failed to contest, and was so long belated that it cannot, as a matter of law, be deemed an honest attempt to comply with tax laws. Moreover, the filing served no tax purpose; it did not allow tax liability to be assessed, it did not affect the amount of liability,[13] nor it did not abate or purge penalties or other liabilities incurred on account of failing to timely file. Accordingly, the Court concludes, as a matter of law, that the document was not a "return" as that term is given effect in Section 523(a)(1)(B)(i). Closely allied with the conclusion that the document served no tax purpose is the fact that a return was no longer required at the time of Ehrig's 2000 submission and therefore Ehrig's 2000 submission did not cure his filing delinquency for tax year 1990. Pursuant to both of these theories, the Court declares the 1990 Tax Liability non-dischargeable.

## C. *Non-dischargeability under Section 523(a)(1)(C)*

Section 523(a)(1)(C) provides that a claim for a tax "with respect to which the

---

13. Whether the IRS was justified in refusing to reconsider its previous assessment or accept Ehrig's declaration of filing status, reallocated income and deductions is not relevant here, since Ehrig had and missed the opportunity to challenge the IRS's refusal to reconsider the assessment. In any event, this Court is not empowered to review that decision by the IRS.

debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax" is non-dischargeable. 11 U.S.C. § 523(a)(1)(C). Ehrig obliquely contends that the undisputed material facts establish that he did not file a fraudulent return or willfully attempted to evade or defeat the 1990 Tax Liability. Ehrig's Brief at 5; Ehrig's Response at 2. As the non-movant, the IRS had the duty to articulate facts and come forward with admissible evidence in support of fraud or willful evasion in order to defeat Ehrig's request for summary judgment on the issue of non-dischargeability under Section 523(a)(1)(C). In the IRS Response, the IRS did not submit evidence sufficient to establish a *prima facie* case of fraud or willful evasion. Thus, the Court concludes that the 1990 Tax Liability is not non-dischargeable under Section 523(a)(1)(C).

## V. Conclusion

The United States' Motion for Summary Judgment is granted. Plaintiff's Motion for Summary Judgment is granted in part (with respect to negating non-dischargeability under 11 U.S.C. § 523(a)(1)(A) and (a)(1)(C)) and denied in part (with respect to non-dischargeability under 11 U.S.C. § 523(a)(1)(B)). The 1990 Tax Liability is hereby declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(B).